# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:17-cv-38-RLV
# (5:15-cr-41-RLV-DCK-1)

| | |
|---|---|
| SAMUEL HENRY VINCI, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

In 1998, pro se Petitioner Samuel Henry Vinci, Jr., was convicted in North Carolina state court of two counts of second-degree rape. (Crim. Case No. 5:15-cr-41-RLV-DCK-1, Doc. No. 20 at ¶ 5: PSR). One of the victims was his fifteen-year-old niece. (Id., Doc. No. 34 at 5: Sent. Tr.). He served his term of imprisonment and was released in 2009. (Id., Doc. No. 20 at ¶ 5). Petitioner was required to register as a sex offender and inform law enforcement of any online identifiers that he used. (Id.). In 2014, law enforcement officers received a tip that Petitioner was using a Facebook account under the name of "Sal Machett."[1] (Id. at ¶ 6). Because Petitioner had not informed law enforcement that he was using this identity, Caldwell County Sheriff's Sergeant Aaron Barlow began an investigation to see whether Petitioner was using this

---

[1] Petitioner will be referred to hereinafter as his Facebook account name, "Machett."

account. (Id.). Using an undercover profile of a fifteen-year-old girl named Sierra, Barlow sent a friend request to Machett's account.² (Id. at ¶ 7).

Machett accepted the friend request and sent Sierra a message using the Facebook chat program. (Id.). Sierra told him she was missing school, and he asked her if she had a boyfriend and whether she liked old guys. (Id.). Machett asked Sierra how old she was, and Sierra replied that she was fifteen. (Id.). He then said that he was too old for her, and he unfriended her. (Id.). Despite this, Machett continued to send Sierra messages, and several hours later he sent her a friend request. (Id.). Shortly thereafter, he asked Sierra to send him a picture, and he sent pictures of himself. (Id.). The photos were of Petitioner. (Id.). Machett then turned the conversation toward sex, asking Sierra if she had sex, if she would send him a video of her being sexy or a close-up picture of her genitals, and if she wanted to make love. (Id. at ¶ 8). He also told her how to delete evidence of their conversations. (Id.).

Over the next two days, Machett kept messaging Sierra online, asking if she would like to meet and if she would call him. (Id. at ¶ 9). When they spoke on the phone, Machett said that he would bring Sierra to his home, where they could watch a movie and he could show her how to make love. (Id.). Due to concerns about Sierra's mother, Machett suggested that they use a code word when chatting, so that he would know that he was speaking with her and not her mother. (Id.). During one of their chats he also asked her to turn on her Facebook location function. (Id. at ¶ 10). Sergeant Barlow quickly drove to the local high school, where he turned on the location feature so the function would show that Sierra was at school. (Id.).

When Sierra expressed concerns about getting pregnant, Machett assured her that he would bring protection. (Id. at ¶ 9). He told her to wear something sexy, and he told her that she

---

² Sergeant Barlow will be referred to hereinafter as his undercover profile name, "Sierra."

2

would not be wearing it for long. (Id.). Machett asked her to send him a nude picture. (Id.). He told her in graphic terms that he wanted to have oral sex and sexual intercourse with her. (Id. at ¶ 10). They determined a place to meet, and Machett/Petitioner was arrested when he arrived at the rendezvous point. (Id. at ¶ 11). Although Petitioner admitted to using the Machett Facebook account, he initially claimed that he had gone to the rendezvous point to pick persimmons. (Id.). He later admitted that he had gone to that location to meet with Sierra. (Id.).

A grand jury charged Petitioner in a superseding indictment with attempted use of an interstate facility to entice a person under the age of 18 to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One), and committing a felony offense involving a minor while required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count Two). (Id., Doc. No. 10: Superseding Indictment). Petitioner agreed to plead guilty to Count One. (Id., Doc. No. 14 at ¶ 1: Plea Agrmt.).

As part of Petitioner's plea agreement, the Government agreed to dismiss Count Two of the indictment, which carried a mandatory, ten-year consecutive sentence. (Id. at ¶ 2). The parties agreed to recommend to the Court that the base offense level was 28; that a two-level enhancement applied for using a computer to entice a minor to engage in prohibited conduct; that entry of the plea was timely for purposes of acceptance of responsibility; that the enhancement in U.S.S.G. § 4B1.5(a) for being a repeat and dangerous sex offender against minors applied; and that the appropriate sentence was one within the applicable guidelines range. (Id. at ¶ 7). As part of the plea agreement, Petitioner agreed that he had read and understood the factual basis and that it could be used to determine the applicable guidelines range. (Id. at ¶ 14). He also agreed to waive the right to appeal his conviction or sentence on direct appeal or in any post-

conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶¶ 18-19).

At the plea hearing, Petitioner stated under oath that he understood the nature of the charge and that it carried a minimum term of ten years of imprisonment and a maximum term of life imprisonment. (Id., Doc. No. 33 at 4: Plea Hrg.). Petitioner stated that he had spoken with his attorney about how the Sentencing Guidelines might apply in his case and that he understood that the applicable sentencing range could not be determined until after his presentence report had been prepared. (Id. at 4-5). Petitioner also affirmed that he understood that he could receive a sentence higher or lower than the guidelines range and that if the sentence imposed was more severe than he expected, or if the Court did not accept the Government's sentencing recommendation, he would still be bound by his plea. (Id. at 5).

The Government reviewed the terms of the plea agreement, including the parties' recommendation that the § 4B1.5(a) enhancement for being a repeat and dangerous sex offender against a minor applied, and Petitioner affirmed that he understood and agreed to those terms. (Id. at 7-10). Defense counsel also stated that she had reviewed each of the terms of the plea agreement with Petitioner and was satisfied that he understood those terms. (Id. at 11). Petitioner affirmed that he had read the factual basis, understood it, and agreed with it. (Id. at 10). Finally, Petitioner stated that he had had sufficient time to discuss any possible defenses with his attorney and that he was satisfied with her services. (Id. at 11). The magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. (Id. at 12).

A probation officer prepared a presentence report (PSR), recommending that Petitioner's offense level was 37, due to his prior conviction for a sex offense and the enhancement for being a repeat and dangerous sex offender against minors. (Id., Doc. No. 20 at ¶ 24). Allowing a

4

three-level reduction for acceptance of responsibility, Petitioner's adjusted offense level was 34. (Id. at ¶¶ 25-27). Given Petitioner's status as a repeat and dangerous sex offender, his criminal history category was V. (Id. at ¶ 40). The resulting guidelines range was 235-293 months of imprisonment. (Id. at ¶ 64).

Petitioner was sentenced on February 9, 2016. At the sentencing hearing, Petitioner affirmed that he understood the nature of the charge and the possible penalties, that his guilty plea was made freely and voluntarily, and that he had committed the offense. (Id., Doc. No. 34 at 2-3: Sent. Tr.). He also stated that he was "fully satisfied with the services of [his] attorney." (Id. at 3). The parties stipulated that there was an independent factual basis to support the plea, and this Court found that there was a sufficient factual basis and reaffirmed its acceptance of Petitioner's guilty plea. (Id.). Petitioner stated that he had reviewed and discussed the PSR with his attorney. (Id. at 3-4). Petitioner argued for a low sentence, and the Government argued for a sentence at the high end of the guidelines range. (Id. at 4-24). This Court sentenced Petitioner to 235 months of imprisonment, which was the low end of the guidelines range. (Id. at 29).

Petitioner appealed, and his appellate counsel filed an Anders brief. The Fourth Circuit affirmed Petitioner's conviction and sentence, holding that his guilty plea was knowingly and voluntarily made and was supported by an adequate factual basis. United States v. Vinci, 669 F. App'x 119, 119 (4th Cir. 2016). Petitioner timely filed the present motion to vacate in February 2017, arguing that his attorney provided ineffective assistance of counsel and that the Government engaged in prosecutorial misconduct. (Doc. No. 1 at 4-5).

**II.     STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

5

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

#### A. Petitioner's Claim of Ineffective Assistance of Counsel

The Court first addresses Petitioner's claim of ineffective assistance of counsel. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner contends that his trial counsel provided ineffective assistance because she did not inform him of the effect of U.S.S.G. § 4B1.5 before he entered his guilty plea.  (Doc. No. 1-2 at 7-10).  Specifically, Petitioner contends that if he had known about this section's increase in his guidelines range, he could have "made a conscious decision to deny the plea agreement." (Id. at 9-10).  Petitioner's assertions are without merit because they contradict his testimony during the plea hearing, and he cannot show prejudice because he does not allege that, but for counsel's performance, he would have proceeded to trial, nor can he show that such a decision would have been reasonable.  Petitioner affirmed during the plea hearing that he understood that he could be sentenced up to the maximum term of life in prison, that the applicable guidelines range could not be determined until after his presentence report was prepared, and that he could not withdraw his plea if he received a higher sentence than he expected.  (Id., Doc. No. 33 at 4-5: Plea Tr.).  He also told the Court that he understood and agreed to the terms of the plea agreement.  (Id. at 10).

7

Even after receiving the PSR, which showed application of the enhancement for being a repeat and dangerous sex offender against minors, Petitioner again told this Court at sentencing that he understood the charges and penalties, that he was satisfied with his attorney, that his guilty plea was voluntary, and that he had committed the offense. (Id., Doc. No. 34 at 2-3: Sent. Tr.). Because Petitioner's ineffective assistance claim contradicts his sworn testimony, it is dismissed. See Lemaster, 403 F.3d at 221-22.

Additionally, even if Petitioner could show deficient performance, he cannot show prejudice. First, Petitioner does not allege that, but for counsel's allegedly deficient conduct, he would have proceeded to trial; rather, he states only that he might have denied the plea agreement. (Doc. No. 1-2 at 9-10). This is insufficient to show prejudice. Second, Petitioner has not shown that it would have been objectively reasonable to proceed to trial, particularly where, as here, a count that carried a mandatory, ten-year consecutive sentence was dismissed as part of the plea deal, he received a reduction for acceptance of responsibility, and he has made no showing that the enhancement that he agreed to should not have been applied. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

In sum, because Petitioner has shown neither deficient performance nor prejudice, his claim of ineffective assistance of counsel is denied. See Strickland, 466 U.S. at 687-88, 694.

**B. Petitioner's Claim of Prosecutorial Misconduct/Entrapment**

The Court next addresses Petitioner's prosecutorial misconduct/entrapment claim. To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). A defendant may invoke entrapment as an affirmative defense where he can show that

the Government induced the crime and that he did not have a predisposition to engage in criminal conduct. Mathews v. United States, 485 U.S. 58, 62-63 (1988). In support of his prosecutorial misconduct claim, Petitioner argues that law enforcement officers lured him into committing an offense that he had no intention of committing; there was no victim in the case; he did not initiate the contact through the Facebook request; and he defriended Sierra once she told him she was fifteen. (Doc. No. 1-2 at 3-7). He also asserts that the Government failed to disclose the facts and circumstances of his offense before his guilty plea so that he could make an informed decision regarding the plea. (Id. at 3, 6-7).

    First, as to Petitioner's entrapment claim, this claim will be dismissed because Petitioner waived an entrapment defense by pleading guilty. See United States v. McWaine, 640 F. App'x 242, 243 (4th Cir. 2016) (noting that a knowing and voluntary guilty plea waives all nonjurisdictional defects, including an entrapment defense). Moreover, even if Petitioner could raise an entrapment defense, it would fail. To show inducement, a defendant must show "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993). The Government's behavior must be "so inducive to a reasonably firm person as likely to displace mens rea." United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970). Inducement requires more than mere solicitation by the Government. United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004); see United States v. Wright, 333 F. App'x 772, 776 (4th Cir. 2009) (holding that "the fact that the government initiated the drug transaction and solicited [a defendant] to broker the drug deal" is insufficient to show inducement).

    Petitioner has not shown any inducement in this case. The Government contacted Petitioner in an effort to determine whether he was using a Facebook account that he had not

reported as part of his registered sex offender requirements. Although the Government sent the friend request, Petitioner willingly accepted it, sought to re-friend Sierra after unfriending her, and introduced the topic of sex into their online conversations. Additionally, he actively requested a sexy video and nude photographs of a person he believed was a fifteen-year-old girl and suggested meeting her to have sex. Thus, Petitioner initiated the unlawful conduct and would not have been entitled to an entrapment instruction even if he had proceeded to trial. See United States v. Fernando, 291 F. App'x 494, 495-96 (4th Cir. 2008) (holding that the entrapment defense was not warranted where the defendant was chatting online with an undercover officer posing as a fourteen-year-old girl). Furthermore, while Petitioner's assertion that there was no victim in the case might be an assertion of the defense of impossibility, this assertion is also waived by his guilty plea and is meritless. See id. at 496 (affirming denial of motion for judgment of acquittal based on impossibility where the defendant was charged with enticing a minor to engage in illegal sexual activity, and where the victim was an undercover officer posing as a minor).

Finally, Petitioner's assertion that the Government failed to disclose the facts and circumstances of his offense before his guilty plea is belied by his sworn testimony before this Court at the plea hearing that he had read, understood, and agreed to the factual basis, which set forth the fact that Sierra was actually an undercover officer. See (Crim. Case No. 5:15cr41-RLV-DCK-1, Doc. No. 20 at ¶ 7; Doc. No. 33 at 10). Thus, Petitioner has shown neither failure to disclose or prejudice. Because Petitioner's prosecutorial misconduct claim is without merit, it is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 10, 2017

Richard L. Voorhees
United States District Judge